### In re GILMAN'S ESTATE.

(Supreme Court, Appellate Division, First Department. April 17, 1903.)

1. POWER OF SURROGATE—COMPROMISE OF DEBT—VALIDITY.

Code Civ. Proc. § 2719, which is part of Code, art. 1, tit. 4, c. 18, entitled "Aid, Supervision and Control, of an Executor or Administrator," gives a surrogate power to "authorize the executor or administrator to compromise or compound a debt or claim, on application, and for good and sufficient cause shown." *Held*, that a surrogate had power to authorize administrators to compromise a claim by accepting stock in a foreign corporation, to which all of the property in dispute was to be transferred, the stock to be issued for a transfer of decedent's interest in the property, which was in possession of one who claimed to be the owner of one-half thereof as surviving partner, and of none of which the administrators had possession.

Appeal from Order of Surrogate, New York County.

In the matter of the application of the administrators of the goods, etc., of George F. Gilman, deceased, for leave to compromise with George H. Hartford their respective claims to the business known as the Great Atlantic & Pacific Tea Company and the Great American Tea Company. From an order of the surrogate of the county of New York (80 N. Y. Supp. 1122) denying the application, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John J. Crawford, for appellant Edward L. Norton.
Lincoln McCormack, for appellant Gilman.
Wm. D. Leonard, for respondent.

INGRAHAM, J. The plaintiffs, as administrators of the estate of George F. Gilman, presented to the Surrogate's Court a petition alleging their appointment as administrators, etc., of George F. Gilman, deceased, and the issuance of letters of administration on the 11th of March, 1901, by the Surrogate's Court of the county of New York, to which jurisdiction the premises rightfully belonged; that the deceased left him surviving no widow or children, and that his next of kin, being brothers and sisters and descendants of brothers and sisters, were all of full age, one of such next of kin having been adjudged an

incompetent person by an order of the Supreme Court of the state of New York, and a committee duly appointed of her person and property, and three of the next of kin are infants, all over the age of 14 years, for whom general guardians have been appointed by the courts of this state; that at the time of his death the said George F. Gilman was the owner of either an entire or part interest in an extensive business known as the Great Atlantic & Pacific Tea Company; that this business consisted of the purchase and sale of tea, coffee, and other merchandise, and that the stock on hand at the time of the death of the said decedent consisted of such merchandise; that the headquarters and principal office of said business was at the time of the death of the said George F. Gilman in the city of New York, but such business then was, and now is, carried on in the 198 separate stores, located in 28 different states and in the District of Columbia, 57 of the same being in this state, and the number of persons employed in said business was and is upwards of 1,800; that from an examination of the books of this business it appeared that at the time of the death of the said Gilman the estimated cost value of such stock amounted to $830,293.17; that the leases of property used for this business had been taken in the name of the petitioner's intestate, and that the actual aggregate rental thereof amounted to about $445,-000; that for many years prior to his death the deceased had not given his personal attention to the said business, but committed the direction and management thereof to one George H. Hartford, and after the death of the said decedent the said Hartford made claim that he was a partner of the decedent in the said business, and held the possession of the property thereto as surviving partner; that an action was commenced by the petitioners, as administrators, alleging that the deceased was the exclusive owner of the said business, and that this action was subsequently removed to the Circuit Court of the United States for the Southern District of New York; that in October, 1901, the said Hartford filed a bill in equity in the said United States Circuit Court against the petitioners, as administrators of said Gilman, that he had been decedent's copartner, and asking for an accounting; that in this latter action an injunction was issued restraining the petitioners from interfering in any way or in any capacity with the business carried on by this alleged copartnership; that, if these suits should be continued, a litigation extending over a number of years would involve difficult questions of law and fact, and in the meantime the business itself might be greatly injured by such litigation, but for the purpose of compromising this litigation and preserving the said business all of the next of kin of the said decedent entered into a contract with said Hartford and the petitioners by which all of the property of the alleged copartnership should be transferred to a corporation to be organized under the laws of the state of New Jersey, with a capital stock of $2,100,000, of which $700,000 was to be common stock and $1,400,000 preferred stock, and whereby the entire business was to be transferred to said corporation in payment for said stock, to be issued in the following proportions: $1,-250,000 of the preferred stock to be issued to the petitioners and

$150,000 of the preferred stock and all the common stock to be issued to said Hartford. A copy of this contract, executed by all the next of kin, including the committee of the incompetent and the general guardians of the infants, the petitioners, as administrators, and by Hartford, was annexed to the petition. It also appeared that the claims against the estate, aggregating $30,723.30 had been filed with the petitioners, and are now being contested by them, and, in addition, one George W. Smith has filed a claim against the estate, which, with interest to March 3, 1901, amounts to the sum of $290,-615.43, which claim is also being contested before a referee; that the petitioners have in their hands the sum of $98,846.61 in cash, and that there are also deposited in the Supreme Court of this state two sums, aggregating $40,903.31, which the petitioners claim as a part of the estate of the said George F. Gilman, but which are also claimed by one Helen Potts Hall; that the petitioners entered into a contract with said Hartford, had agreed to furnish the cash necessary to pay the expenses of administration, taxes, and claims of creditors in full, the said Hartford to purchase at the option of the petitioners, for cash, a sufficient amount of preferred stock to realize a sum required for the payment of all these creditors and other expenses of administration at par.

Upon this petition citation was issued by the surrogate requiring all persons interested in the estate to show cause why the application should not be granted. No objection was presented, except by George W. Smith, whose claim as creditor is now being contested. The surrogate denied the application upon the sole ground that he was without jurisdiction to entertain it. The surrogate, in his opinion, seems to recognize that the proposed contract or agreement would be for the benefit of the estate, stating:

"I might, therefore, possibly approve a transfer of part of the estate to a stranger in satisfaction of his claim, and call it a compromise. I might, on the same ground, ratify a contract admitting the claim made by Mr. Hartford as a surviving partner. But I cannot see clearly how the approval of a transfer of all the assets of the estate to a New Jersey corporation, in consideration of stock of that corporation, can be justified by any such reasoning. Sales of the property of the estate of a decedent must be made by the personal representatives on their own responsibility. * * *. His investments must also be made upon his own judgment and at his own hazard; and purchases of the stock of a corporation, either foreign or domestic, are not favorably regarded. Under the peculiar circumstances of this case it may well be that the proposed arrangement is a good one. It has received the approval of numerous interested persons, acting under the advice of counsel apparently well informed. I place my refusal to grant the order solely upon the ground of want of jurisdiction."

Upon this appeal the only question before us is whether the surrogate had jurisdiction to grant this application; for it is clear, both from the order entered and his opinion, that he did not examine into the merits of the proposed compromise. The peculiar character of the property involved in this dispute between the administrators and the person in possession of the business of the decedent claiming to hold it as surviving partner is such that a simple winding up of the business might be disastrous to those interested in the estate. The

value of the business is largely enhanced by its continuance under the management and control of the person to whom the decedent had committed the management of the business during his lifetime. Hartford had sustained his right to the possession of the business and the assets as surviving partner to the extent of procuring an injunction restraining the petitioners from interfering with the business, and under this injunction he was in control of the business as surviving partner. If there was a partnership, the interest of the estate consisted solely of the right to receive one-half of the amount realized from the business after the payment of the debts. If Hartford should not succeed in establishing that he was a copartner, the estate would then be the owner of the business, and entitled to require Hartford to account as the agent of the·decedent for all the property that had come into his hands as such agent, and for the disposition that had been made of the property after the decedent's death. In either case it would seem that the substantial situation was that the estate had a claim against Hartford for property which the administrators had never been able to reduce to possession, and which at the time of the presentation of this petition was in possession of Hartford. It would seem, therefore, to follow that what the petitioners sought to compromise was a claim against Hartford.

By section 2719 of the Code of Civil Procedure the surrogate is given power to "authorize the executor or administrator to compromise or compound a debt or claim, on application, and for good and sufficient cause shown." This section is part of article 1, tit. 4, c. 18, of the Code, which is entitled "Aid, Supervision and Control, of an Executor or Administrator." The question here is whether or not the surrogate had power, under the provision of this section, to authorize the administrators to settle the claim of the estate against Hartford in the manner proposed by this agreement, to which all of those interested in the estate have assented, except one creditor, whose claim is not established. The application to the surrogate was to "compromise or compound a debt or claim" against Hartford by accepting stock in a foreign corporation, to which all of the property which is in dispute is to be transferred, the stock to be issued for a transfer of the decedent's interest in the property to be preferred stock, and entitled to dividends before the common stock issued to Hartford, now in possession of the property, and who claims to be the owner of one-half thereof as a surviving partner, shall receive a dividend. It seems to me that such a settlement is a compromise or compound of a claim within this section of the Code. An entirely different question would be presented if the petitioners had obtained absolute possession of this property, and proposed to sell it to a corporation. The surrogate would clearly, under this provision of the Code, have no power to authorize such a sale, whether it was all or a part of the decedent's estate. There might be a doubt whether it could be said to be a compromise of a claim if the petitioners, having the possession or title to the property of the decedent, had asked to be allowed to transfer all of such property to persons claiming to be a partner in satisfaction of his claim. Such, however, is not the substantial condition pre-

sented. Here the administrators have the possession of none of the property. It is all in the possession of a person claiming to be a partner of the decedent, and claiming to hold the property as surviving partner, having obtained an injunction in an action brought by him to enforce his rights, which restrains the administrators from taking any steps to obtain possession of the property except in the action brought for an accounting by the person claiming to be the surviving partner. The question as to whether such a compromise should be allowed when what the administrators were to receive was stock of a foreign corporation is a question, not of jurisdiction to approve the compromise upon which the learned surrogate decided the application, but whether he should exercise it in favor of the proposed compromise; and it is apparent, both from the order of the surrogate and his opinion, that he did not consider or determine that question. Nor is the question as to whether or not we should approve of such a compromise now before us. All of those interested in the estate, except this one creditor, seem to have approved of the proposed arrangement. It can easily be seen how it might be to the advantage of the interests of those interested in this estate to have this arrangement consummated, but, if the surrogate has power to consider—as we think he has—whether it would be for the benefit of the estate, he has the right to consider the interests of those interested and their consent to the arrangement in determining as to the propriety of approving of the arrangement. It may be that under such circumstances the surrogate would be justified in requiring some security to be given by which the opposing creditor would be secured in the event of his establishing his claim, or any part thereof, against the estate. That is a question to be determined by the surrogate in determining whether the application should be granted; but we think that the surrogate had power to approve of this settlement as a compromise of a claim made by the estate against the person claiming to be the partner of the decedent, and as such he should have considered the application upon its merits.

It follows that the order appealed from must be reversed, and the matter sent back to the surrogate, with costs of this appeal to abide his final determination.

O'BRIEN, J., concurs. VAN BRUNT, P. J., and PATTERSON and HATCH, JJ., concur in result.